1  Ben M. Davidson (State Bar No. 181464)
   bdavidson@davidson-lawfirm.com
2  Davidson Law Group, a Law Corporation
   11377 West Olympic Boulevard
3  Los Angeles, CA 90064
   Telephone: (310) 473-2300
4  Facsimile: (310) 473-2941

5  Attorneys for Defendant
   4355768 CANADA, INC.
6

7

8                 **UNITED STATES DISTRICT COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10                      **SOUTHERN DIVISION**

11  ESSOCIATE, INC., a Delaware          CASE NO. 14-cv-00679-JVS-DFM
    corporation,
12                                        **NOTICE OF MOTION AND**
              Plaintiff,                  **MOTION TO STRIKE OF**
13                                        **DEFENDANT 4355768 CANADA,**
          vs.                             **INC., DBA CRAKMEDIA;**
14                                        **MEMORANDUM OF POINTS &**
    4355768 CANADA, INC., a Canada        **AUTHORITIES**
15  corporation, dba CrakMedia,
                                          Time:      1:30 PM
16            Defendant.                  Date:      January 5, 2014
                                          Judge:     Hon. James V. Selna
17

18

19

20

21

22

23

24

25

26

27

28

6532386.1

─────────────────────────────────────────────────────────
      **DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on January 5, 2014, at 1:30 p.m., or as soon thereafter as counsel may be heard at the United States District Court for the Central District of California, before the Honorable James V. Selna, Defendant 4355768 CANADA, Inc., dba, Crakmedia, ("Crakmedia") will and hereby do move the Court to:  (1) strike Plaintiff Essociate, Inc.'s deficient infringement contentions pursuant to Patent Local Rule 3-1; and (2) stay infringement-related discovery and the requirement to serve responsive invalidity contentions until Essociate serves contentions that comply with the Rules.

At the Scheduling Conference in this case, the Court ordered Essociate to serve its infringement contentions within 14 days, rejecting its request for two months to develop contentions as it takes discovery.  Essociate then served a set of conclusory "contentions" that failed to explain its infringement theory, as the Patent Local Rules require.  Essociate promised to propose revised contentions that would address Crakmedia's objections and avoid the need for motion practice.

Instead, on December 1, 2014, Essociate "served" contentions on an altogether new—and equally unexplained—infringement theory.  Essociate asserts that these new contentions are now "operative" and that it can pursue discovery on its new theories.  But Essociate has never obtained leave of Court to serve its new contentions.  Whether or not Essociate obtains leave to change its contentions—through a required motion or otherwise—its "amended" contentions remain as evasive on the critical issues in this case as its discarded ones:

(1) Essociate refuses to provide contentions on its theory that Crakmedia—though located entirely in Canada—is infringing a U.S. patent.  Essociate has argued in a letter (not contentions) that Crakmedia infringes in this country because U.S. website visitors "use" and "control" Crakmedia's affiliate referral network "as a whole."

2

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

But Essociate refuses to explain its theory that website visitors control the system "as a whole," including by identifying:

>    (a) how these website visitors could possibly "configure" merchant networks to receive referrals through Crakmedia;
>
>    (b) how these website visitors could possibly "assign" webmaster IDs to the websites that sign up to Crakmedia's program;
>
>    (c) how, even if website *visitors* could do these things to "use" the system as a whole, that could make *Crakmedia* an infringer.

(2) Essociate refuses to give meaningful notice of its infringement theory by identifying what it is in Crakmedia's computer program or system that meets each element of its patent claims, as Essociate interprets the claims. For example, Essociate contends that various values in a URL are "correlated" because they have a "relationship" or that another value "corresponds" to a particular identification system. But it refuses to say what that supposed relationship is or how the value corresponds to this system. Identifying values that supposedly meet claimed requirements *without saying how* does not provide fair notice of any infringement theory under Patent L.R. 3-1.

(3) Essociate categorically—and without explanation—identifies every affiliate marketing product or service Crakmedia has ever provided as an "accused instrumentality."  Yet, in its claim charts, Essociate identifies the "infringement" as a solitary, idiosyncratic interaction of URL values used by Crakmedia and by a third-party merchant (SCTR).  Essociate has offered no basis in logic or fact for alleging that every other merchant website that Crakmedia interacts with uses the same URL values used by this particular third-party merchant (SCTR).

(4) Essociate uses boilerplate language to "reserve" infringement under the doctrine of equivalents, which does not give Crakmedia notice of any infringement theory, as required by the Patent Local Rules.

3

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

1    Unless and until Essociate has provided contentions that address these

2  shortcomings and provides fair notice of its infringement theories, the Court should

3  stay infringement related discovery and responsive invalidity deadlines.

4    This motion is based on this Notice of Motion and Motion, the following

5  Memorandum of Points and Authorities, the supporting Declaration of Ben M.

6  Davidson, the pleadings and papers on file with the Court, any matters on which

7  the Court may take judicial notice, any evidence or argument presented at the

8  hearing on this motion, and any other matters the Court deems proper.

9    This motion is filed following a conference of counsel pursuant to L-R 7-3

10  which occurred on November 19, 2014, November 24, 2014, and December 2,

11  2014.

12  DATED:  December 8, 2014          Respectfully submitted,

13

14                                            DAVIDSON LAW GROUP

15

16                                 By:  _____/s/ Ben M. Davidson_____
                                         Ben M. Davidson, State Bar No. 181464
17                                       bdavidson@davidson-lawfirm.com

18                                       Attorneys for Defendant
                                         4355768 CANADA, INC., a Canada
19                                       corporation, d/b/a/ CrakMedia

20

21

22

23

24

25

26

27

28

6532386.1

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

# **TABLE OF CONTENTS**

**Page**

I.   Introduction ........................................................................................... 1

II.   Relevant Factual Background ............................................................... 4

III.   Argument .............................................................................................. 5

A.   Legal Standard Applicable To Infringement Contentions ................... 5

B.   Essociate's Infringement Contention Should be Stricken Because
Essociate Has Abandoned Them .......................................................... 7

C.   Essociate's "Amended" Infringement Contentions Are Also
Inadequate Under The Patent Local Rules ........................................... 8

1.   Essociate's Infringement Contentions Fail To Meet The
Requirements Of Patent Local Rule 3-1 ...................................... 9

(a)   The contentions do not identify a theory for suing a
Canadian company for infringing claims of
a U.S. Patent ...................................................................... 9

(b)   The contentions do not map each of
the construed elements of claim 15 to the
accused instrumentalities ................................................. 12

(i)   Essociate does not say why there is
"correlation" between the new TWUID
and the alleged SID ............................................. 13

(ii)   Essociate does not say how it finds
"correspond[ence]" between the unique
identification system of VideosZ.com and   the
TWUID ("l" and "t" values) ................................. 15

(iii)   Essociate does not identify where it finds
"configuring" SCTR's affiliate system
through a "data setup" operation ........................ 16

(c)   The contentions do not map each of
the construed elements of means plus function
28 to the accused instrumentalities ................................. 17

(d)   The contentions do not identify the accused
instrumentalities with specificity ................................... 18

(e)   The contentions use boilerplate language to allege
infringement under the doctrine of equivalents ........... 21

i

1

## TABLE OF CONTENTS
## <u>(continued)</u>

2

<u>Page</u>

3

4

2.    Essociate Has Failed to Make a Reasonable Inquiry, as
Required By FRCP 26(g) and Patent Local Rule 2-3,
Into the Alleged Infringing Products Before Seeking
Discovery. ................................................................................21

5

6

7

8

D.    Courts Do Not Permit Discovery Until the Essociate Has Met its
Obligations Under Patent Local Rule 3-1 ...........................................22

9

IV.    Conclusion ........................................................................................24

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

*Antonious v. Spalding & Evenflo Cos., Inc.*,
  275 F.3d 1066 (Fed. Cir. 2002) ..................................................................... 6, 21

*B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102, 1134
  (C.D. Cal. 2013) ................................................................................................. 1, 2

*Bender v. Maxim Integrated Products, Inc.*,
  No. C-09-01152, 2010 U.S. Dist. LEXIS 11539 (N.D. Cal. March
  22, 2010) ................................................................................................................ 1

*Bender v. Maxim Integrated Products, Inc.*
  No. C-09-01152, 2010 U.S. Dist. LEXIS 32115, (N.D. Cal. March
  22, 2010) ...................................................................................... 7, 9, 19, 23

*Digital-Vending Servs, Int'l, LLC v. Univ. of Phoenix, Inc.*
  672 F.3d 1270, 1282 n (Fed. Cir. 2012) ........................................................ 10

*Essociate, Inc. v. Blue Whaler Investments, LLC*
  CV 10-2017 JVS (MLGx) ................................................................................ 3, 8

*Frantz v. United States Powerlifting Fed'n*, 836 F.2d 1063, 1067
  (7th Cir. 1987) ...................................................................................................... 7

*Infineon Techs. v. Volterra Semiconductor*, No. C-11-06239-MMC,
  2012 U.S. Dist. LEXIS 77220 (N.D. Cal. June 4, 2012) ........................... 9, 22

*Intertrust Techs. Corp. v. Microsoft Corp.*,
  No. 01-1640, 2003 U.S. Dist. LEXIS 22736 (N.D. Cal. Nov. 26,
  2003) ...................................................................................................................... 1, 9

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
  894 F.2d 1318 (Fed. Cir. 1990) ................................................................. 21, 22

*Microsoft Corp. v. AT&T Corp.*,
  550 U.S. 437, 127 S.Ct. 1746 (2007) .............................................................. 10

*Network Caching Tech., LLC v. Novell, Inc.*,
  No. 01-2079-VRW, 2002 U.S. Dist. LEXIS 26098
  (N.D. Cal. Aug. 13, 2002) .........................................................................passim

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) ................................................................ 10, 11

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) .............................................................................. 23

*Oracle America, Inv. V. Google, Inc.*
    2011 U.S. Dist. LEXIS 109544, 18 (N.D. Cal. Sept. 26, 2011) ........................ 19

*Refac Int'l, Ltd. v. Hitachi, Ltd.*,
    141 F.R.D. 281 (C.D. Cal. 1991) .......................................................... 6

*Shared Memory Graphics, LLC v. Apple, Inc.*,
    No. 10-2475 MMC, 2011 U.S. Dist. LEXIS 99166 (N.D. Cal. Sept.
    2, 2011) ................................................................................ 12, 16, 23

*Theranos, Inc. v. Fuirsz Pharma LLC*,
    2012 U.S. Dist. LEXIS 172160 (N.D. Cal. 2012) .................................... 1, 13, 24

*View Eng'g, Inc. v. Robotic Visions Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) ................................................................ passim

*Vigilos, LLC v. Sling Media, Inc.*
    2012 U.S. Dist. LEXIS 189491, *13 (N.D. Cal. July 12, 2012) ........................ 19

### STATUTES

35 U.S.C. § 112 ........................................................................................ 17

35 U.S.C. § 112(f) .................................................................................... 17

35 U.S.C. § 271(a) .............................................................................. 11, 12

### OTHER AUTHORITIES

Federal Rule of Civil Procedure
    Rule 11 ............................................................................................ passim
    Rule 26(g) .................................................................................. 5, 6, 21, 22

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Patent Local Rule

    2-3 ................................................................................. 5, 21, 22

    3–1 ..................................................................................... passim

    3-1(b) ................................................................................. 12, 19

    3-1(c) ....................................................................... 6, 12, 13, 18

    3-6 ........................................................................................... 8

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

6532386.1

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

Defendant Crakmedia respectfully moves the Court to strike Essociate's infringement contentions for U.S. Patent No. 6,804,660 ("the Essociate Patent")[1] and to stay infringement-related discovery and the deadline for serving responsive invalidity contentions.  Essociate served infringement contentions that were conclusory, in violation of the Patent Local Rules.  It then abandoned those contentions and is now prosecuting this case based on "amended" contentions that it has not obtained leave from this Court to pursue, and that, in any event, do not overcome Crakmedia's objections based on the Patent Local Rules.

The Patent Local Rules do not tolerate evasiveness in disclosing infringement theories.  They require the party claiming infringement to "crystallize its theories of the case and patent claims" early in the litigation and to adhere to those theories once disclosed."[2]  Under Patent Local Rule 3-1, a patentee "is required to include in its infringement contentions all facts known to it, including those discovered during its pre-filing inquiry."[3]  Courts applying the Patent Local Rules "routinely stay discovery until the plaintiff has met its obligations under" Rule 3-1.[4]

Here, Essociate has failed to comply with Rule 3-1.  Essociate served nonsensical contentions that Essociate's counsel was finally forced to admit were

---

[1]  Attached as Exhibit 1 to the Davidson Declaration filed herewith ("Davidson Ex. 1.").

[2]  *B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102, 1134 (C.D. Cal. 2013); *Bender v. Maxim Integrated Products, Inc.*, No. C-09-01152, 2010 U.S. Dist. LEXIS 11539, *7 (N.D. Cal. March 22, 2010).

[3]  *Theranos, Inc. v. Fuirsz Pharma LLC*, 2012 U.S. Dist. LEXIS 172160, *8 (N.D. Cal. November 30, 2012).

[4]  *Infineon Techs. v. Volterra Semiconductor*, 2012 U.S. Dist. LEXIS 77220, *6 (N.D. Cal. June 4, 2012); *Intertrust Techs. Corp. v. Microsoft Corp.*, No. 01-1640, 2003 U.S. Dist. LEXIS 22736, at *3 (N.D. Cal. Nov. 26, 2003)); *Theranos, Inc.*, 2012 U.S. Dist. LEXIS 172160, * 19 (collecting cases).

1

"wrong" when it obtained a declaration from a third-party merchant (SCTR) that receives website traffic from Crakmedia.[5]

Essociate then purported to "serve" "amended" contentions that are equally nonsensical.  Under the Rules, Essociate should have asked the Court for leave to amend its contentions.  As a court in this District has held, contentions that comply with the Rules will appropriately "confine discovery . . . to information that is pertinent to the theories of the case."[6]  Essociate currently has no "operative" contentions—because it withdraw its original contentions.  Yet it nevertheless proceeds to take discovery on theories that it has not been given leave to pursue, and that are insufficiently explained for many of the same reasons as the original ones.

First, Essociate still refuses to identify any theory for accusing a company located entirely in Canada of infringing a U.S. Patent.  Essociate's counsel has argued in a letter that Crakmedia infringes because website visitors control its system "as a whole" from the U.S.  As the Court ruled in another *Essociate* case, however, "letters and reports do not constitute proper disclosure of infringement contentions in accordance with the Patent Local Rules."[7]  Essociate must provide contentions, and these contentions must specifically identify how Crakmedia supposedly infringes the patent claims in this case through activities of third parties in the United States..

Second, Essociate has failed to give fair notice of its infringement theory by mapping each limitation of the claims, using its own constructions, to the accused instrumentality.  As one example, in its "amended" contentions Essociate changed its mind about what to accuse of being a "target webmaster unique identifier"

---

[5] Davidson Decl., ¶ 14.

[6] *B-K Lighting*, 930 F. Supp. 2d at 1134.

[7] *Essociate, Inc. v. Neverblue Media, Inc*., CV-12-08455 JVS (MLGx)(July 8, 2013 Order granting in part defendant's motion to strike contentions).

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

("TWUID") required for infringement.[8]   Essociate originally identified a tracking value that is used by Crakmedia as the TWUID.  Without any support in the third-party declration on which it purports to rely, SCTR now identifies a new supposed "TWUID."  But it still refuses to say how that new value is supposed to have the requisite claimed "relationship" with the value it calls a "SID" (source webmaster unique ID).  Identifying random values without explaining how they meet the claim requirements fails to give fair notice of any infringement theory.

Third, Essociate categorically identifies virtually everything CrakMedia has ever done with respect to online affiliate marketing as an "Accused Instrumentality," *i.e.*, "all versions of CrakMedia's affiliate-marketing service" ever made, and all "services" and "products" relating to them.  Rule 3-1 does not permit such categorical identifications.  Essociate can only accuse instrumentalities for which it can provide <u>contentions</u>.  And here, Essociate's contentions rely on third-party merchant SCTR's own unique identification system and unique URL values.  Essociate offers no basis in its chart for accusing everything else Crakmedia has ever done as an infringement.

Fourth, Essociate uses meaningless boilerplate language to "reserve" the right to allege infringement under the doctrine of equivalents.  It does not support its contention with any comparison of the functions of the claimed and accused systems.

Essociate's poorly-thought out infringement theories already have forced Crakmedia to incur <u>$150,000 in legal fees</u>, all so that Essociate could seek a royalty on less than <u>$40,000</u> in commissions from the single website identified in its contentions.  Essociate now wants to pursue an altogether new theory that it is (again) refusing to explain pursuant to the Rules.  Essociate is also pursuing broad

---

[8] The Court is well familiar with these terms from other Essociate cases, including *Essociate, Inc. v. Blue Whaler Investments, LLC* CV 10-2017 JVS (MLGx).

6532386.1

1    discovery on every affiliate marketing service Crakmedia has ever provided, which

2    promises to impose even greater litigation costs and burdens on Crakmedia.

3    　　　The Court should enforce the Patent Local Rules by staying discovery

4    related to infringement—and Crakmedia's obligation to provide responsive

5    invalidity contentions—unless and until Essociate prepares contentions that

6    provide fair notice of its infringement theories.

7    **II.    RELEVANT FACTUAL BACKGROUND**

8    　　　Crakmedia identified the problems with Essociate's infringement case

9    beginning on September 26, 2014.  In response, Essociate provided a copy of its

10   Rule 11 investigation, which included a claim chart for only method claim 1.

11   Davidson Ex. 3.  Essociate's analysis did not identify any basis for using a U.S.

12   patent to sue a company located in Canada.

13   　　　The parties met and conferred again by phone on September 29, 2014.  With

14   respect to its means-plus-function system claim 28, Essociate said it was

15   proceeding under one of two alternative theories regarding how the "correlation"

16   means is performed by Crakmedia—either through a "lookup table" or a "hybrid"

17   method.  Essociate promised to explain these theories as soon as possible, but it

18   never has.  Davidson Ex. 5 at 174.

19   　　　In its Rule 26(f) report, Crakmedia requested that the Court enforce the

20   Patent Local Rules by requiring Essociate to provide its contentions within 14

21   days, not two months, as Essociate had requested.  Dkt. 97 at 9.  The Court adopted

22   Crakmedia's proposed schedule.  Davidson Ex. 6 at 186.

23   　　　When Essociate served its contentions, it withdrew method claim 1,

24   effectively conceding that Crakmedia could not "use" the method in the United

25   States because it is located in Canada.  But Essociate inexplicably asserted

26   "computer program" claim 15[9]—despite its own position that this is just "a

27   computer program claim which describes the use of code segments to execute the

28   [9] Davidson Ex. 2 at 41.

4

6532386.1

method described in claim 1." Davidson Ex. 3 at 103. Essociate also added

conclusory contentions for means-plus-function claim 28. Ex. 24.

Crakmedia discussed deficiencies in these contentions with Essociate's

counsel on November 19, 2014. Davidson Ex. 9. On November 24, 2014,

Essociate stipulated that Crakmedia's invalidity contentions need not be served

until January 23, 2015 so that the Court could consider Crakmedia's motion on a

regularly-noticed briefing schedule. It also represented that, by December 1, 2014,

it would "serve proposed revised infringement contentions to eliminate

unnecessary motion practice." Ex. 11 at 3. Rather than explain its original

contentions with more detail, however, Essociate replaced them with an altogether

new theory.[10] As Essociate admitted, the new contentions were not intended as "a

'response' to Crakmedia's claims that the previous version was deficient."

Davidson Ex. 13. As a result, they do not overcome Crakmedia's objections.

## III.   ARGUMENT

### A.   <u>Legal Standard Applicable To Infringement Contentions</u>

Essociate's inability to articulate infringement contentions that comply with

the Patent Local Rules stems from its inadequate pre-filing investigation. Under

Federal Rule of Civil Procedure 26(g) and Patent Local Rule 2-3, an attorney must

make a reasonable inquiry and conclude that the information contained in the

discovery responses is complete and correct. These rules parallel the requirements

of Federal Rule of Civil Procedure 11, and the standard of the Rule 11 pre-filing

inquiry establishes the minimum level of detail required for adequate infringement

contentions.[11]

---

[10] Essociate's infringement contentions identify a new "target webmaster unique identifier" ("TWUID"). *Compare* Davidson Ex. 2 at 46 ("TWUID" is the Crakmedia "craktracker" value) *with* Davidson Ex. 15 at 245 (TWUID is now the combination of "l" and "t" values).

[11] *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("Rule 26(g) requires a party to make a 'reasonable inquiry' before seeking discovery, and parallels the thrust of Rule 11 with respect to making allegations in

Specifically, before alleging patent infringement (and thus in order to set forth sustainable infringement contentions), Rule 11 mandates that an attorney perform a two-step investigation. The attorney must "at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement."[12] This standard requires a careful analysis of the accused product.[13] For means-plus-function limitations, infringement contentions must also include the identity of the structures, acts, or materials that perform the claimed function. Patent L.R. 3-1(c).

Patent litigation is notoriously expensive and, as this case illustrates, defending against "even a single invalid theory forces the defendant to respond and to do work it should not have been required to do."[14] Each complaint forces the courts and opposing counsel to expend hundreds or thousands of hours investigating, researching and responding to the allegation.[15] The American Intellectual Property Law Association estimated that, in 2013, the median litigation costs per side to take a relatively small patent infringement suit—with between

_____

(…continued)
a complaint."); *Network Caching Tech., LLC v. Novell, Inc.*, No. 01-2079-VRW, 2002 U.S. Dist. LEXIS 26098, at *12 (N.D. Cal. Aug. 13, 2002) (agreeing with alleged infringer's argument that Patent Local Rule 3-1 requires disclosure, at a minimum, of the patent holder's reasonable basis for concluding that there was a factual basis for the complaint; holding that the "standard of FRCP 11 prefiling inquiry establishes a minimum level of detail that Patent LR 3-1 requires.").

[12] *View Eng'g, Inc. v. Robotic Visions Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

[13] *See, e.g. Refac Int'l, Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 281, 286–88 (C.D. Cal. 1991) (sanctions imposed where the patentholder failed to perform a minimum factual inquiry before filing the complaint).

[14] *Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002).

[15] *View Eng'g, Inc.*, 208 F.3d at 986 (citing *Frantz v. United States Powerlifting Fed'n*, 836 F.2d 1063, 1067 (7th Cir. 1987)).

6532386.1

$1 million -$10 million to $10 at stake—through disposition was $2 million.[16] Thus, as Federal Circuit has held, performing a reasonable pre-filing assessment in a patent case is "extremely important" to avoid costly and baseless litigation.[17]

Recognizing this, the Patent Local Rules require a party to disclose its reasonable basis for concluding that that its infringement claim had a factual basis. If a party does not comply with this requirement, it is appropriate to strike the inadequate infringement contentions.[18]  All discovery should be stayed until the party claiming infringement articulates an appropriate theory and is permitted by the Court to serve adequate infringement contentions.[19]

Here, notwithstanding that it sent "amended" infringement contentions to Crakmedia on December 1, 2014, Essociate has <u>not</u> adequately articulated a theory under the Rules, and it should <u>not</u> be permitted to proceed further with its case until it has.

### B.    <u>Essociate's Infringement Contentions Should Be Stricken Because Essociate Has Abandoned Them.</u>

The lynchpin of Essociate's contentions was the allegation that (1) Crakmedia's affiliate tracking ID—which it aptly calls "craktracker"—is the Essociate Patent's claimed "TWUID" (target webmaster I); and (2) that Crakmedia infringes by "correlating" this TWUID to the alleged "webmaster unique identifier" (SID).[20]

---

[16] *See* Davidson Decl. ¶ 18.

[17] *View Eng'g, Inc.*, 208 F.3d at 986.

[18] *See Network Caching*, 2002 U.S. Dist. LEXIS 26098, at *16 (striking second revised contentions).

[19] *See id.*; *see also Bender v. Maxim Integrated Products, Inc.*, No. C-09-01152, 2010 U.S. Dist. LEXIS 32115, at*7(N.D. Cal. March 22, 2010) ("Until plaintiff meets the burden of providing infringement contentions compliant with Patent L.R. 3-1, the Court will not order defendant to proceed with discovery.").

[20] These terms were discussed by the Court in *Essociate, Inc. v. Blue Whaler Investments, LLC*, CV 10-2017 JVS(MLGx), Dkt. 140 (02/06/12 *Markman* Order) at 6.

7

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

Essociate has admitted through its counsel that this was just "wrong," as Crakmedia has been saying all along.[21]   But rather than dismiss its case, Essociate now calls another part of the URL for the third-party website identified in its contentions the supposed TWUID.  *See* Davidson Ex. 15 at 245 (the "l" and "t" variables together are now called a TWUID).[22]  In light of this about-face, and Essociate's own admission, the Court should strike Essociate's operative infringement contentions.

### C.   Essociate's "Amended" Infringement Contentions Are Also Inadequate Under The Patent Local Rules.

As explained earlier, Essociate has not sought leave to amend its contentions, even though it must "obtain leave of court to amend contentions." Patent Local Rule 3-6.  Essociate has suggested that it need not do so here because its contentions simply "reflect information obtained from SCTR since we originally served [contentions]."[23]  Whaver the reason for the change, however, Essociate must always seek permission from the Court to change its infringement theory.  Moreover, as explained below, the contentions are not, in fact, supported by the declaration Essociate obtained.  The SCTR declaration showed that Essociate's first infringement theory was wrong, but it also shows that its new infringement theory is wrong.  The declaration does not justify Essociate's pursuit of its new theory.

---

[21] Davidson Decl., ¶ 14.

[22] The Piquet declaration from third-party merchant SCTR attached as Exhibit 14 unequivocally explains that the "craktracker" value used by Crakmedia for tracking—which was the centerpiece of Essociate's infringement case—is ***not*** used ***at all*** by the purported target merchant system SCTR, and is ***not*** "correlated" to anything in SCTR's system.  Essociate nevertheless goes on alleging infringement despite its knowledge that Crakmedia uses the "craktracker" value for tracking affiliates and that the "target merchant" system does not.

[23] Davidson Ex. 13.

6532386.1

More importantly, as explained below, even if Essociate is able to obtain leave to amend its contentions, those new contentions would still be conclusory and insufficient under the Patent Local Rules.

## 1. Essociate's Infringement Contentions Fail To Meet The Requirements Of Patent Local Rule 3-1.

The "overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims."[24]  Indeed, the very purpose of Patent Local Rule 3-1 is to "require a plaintiff to crystalize its theory of the case and patent claims."[25]  It is a discovery device that takes the place of a series of interrogatories that the opposing party would likely have propounded had the patent local rules not provided for streamlined discovery.[26]  Essociate's contentions fail to explain its theories, as required by these rules.

### (a) The contentions do not identify a theory for suing a Canadian company for infringing claims of a U.S. Patent

The Supreme Court has held that there is a presumption that United States laws have no extraterritorial effect, and that this presumption "applies with particular force in patent law."[27]  The Federal Circuit has therefore developed clear rules that limit the extraterritorial application of the patent laws.

[24] *Bender*, 2010 U.S. Dist. LEXIS 32115, at *3–*4 (citing *Intertrust Techs. Corp. v. Microsoft Corp.*, No. 01-1640, 2003 U.S. Dist. LEXIS 22736, at *6 (N.D. Cal. Nov. 26, 2003).).

[25] *Bender*, 2010 U.S. Dist. LEXIS 32115, at *7.

[26] *Infineon Techs. v. Volterra Semiconductor*, No. C-11-06239-MMC, 2012 U.S. Dist. LEXIS 77220, *5 (N.D. Cal. June 4, 2012).

[27] *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55, 127 S.Ct. 1746, 1758 (2007) ("The traditional understanding that our patent law 'operate[s] only domestically and d[oes] not extend to foreign activities,' …, is embedded in the Patent Act itself, which provides that a patent confers exclusive rights in an invention within the United States.")(int. citations omitted).

As a result, the first and most important issue Essociate should have asked before filing suit was how Crakmedia, which is located in Canada, can infringe its U.S. patent claims.  Essociate did not do this.  It prepared a claim chart for only method claim 1 and improperly sued Crakmedia on that method.  Dkt. 1, ¶ 11.  Though it ultimately was forced to withdraw claim 1 (at least from its contentions), Essociate was ultimately forced to withdraw this patent claim after Crakmedia pointed out that method claims cannot be infringed "unless each of the steps is performed in this country."[28]

Nevertheless, and without explanation, Essociate asserted "computer program" claim 15, which is a so-called *Beauregard* claim—a claim to a computer readable medium for carrying out steps of a method.[29]  The Federal Circuit treats such functionally-defined claims as method claims to avoid "exalti[ng] form over substance."[30]  Just as method claim 1 cannot be <u>used</u> in the United States by a company operating a computer in Canada, the program that runs that method (claim 15) cannot be used here by operating the computer in Canada.  The contention for claim 15 is simply silent on this issue, just as Essociate has been throughout this case.[31]  So Crakmedia has no notice of why Essociate believes it infringes the computer program claim.

The only other independent claim Essociate has left is "system" claim 28.  Essociate has stated in meet-and-confer correspondence that, as in *NTP, Inc. v. Research In Motion, Ltd.*,[32] Crakmedia's system **"as a whole"** is put into service by users of its system in the United States, *i.e.*, people who visit websites that can

---

[28] *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005).

[29] *See* Davidson Ex. 3 at 103.

[30] *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1282 n. 1 (Fed. Cir. 2012).

[31] Davidson Ex. 15 at 232.

[32] 418 F.3d 1282 (Fed. Cir. 2005).

DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS

refer traffic to merchant networks.[33]  Yet Essociate has refused to state this theory in infringement contentions, perhaps because it recognizes that the theory does not "fit" the particular claims of the Essociate patent.

In *NTP*, the Federal Circuit held that "[t]he use of a claimed system under [35 U.S.C. §] 271(a) is the place at which the system as a *whole* is put into service, *i.e.*, the place where control of the system is exercised and beneficial use of the system obtained." 418 F.3d at 1317 (Emphasis added).   There, Blackberry users themselves were infringing because "[w]hen RIM's United States customers send and receive messages by manipulating the handheld devices in their possession in the United States, the location of the use of the communication system as a whole occurs in the United States."[34]

Here, unlike in *NTP*, Essociate wrote claims to cover a system that cannot be controlled or put into service by its "*users*."  The Essociate Patent's claims require that the merchant network be "configure[d]" and that websites be "assign[ed]" unique IDs *by the virtual affiliate system* (allegedly Crakmedia).[35]  That is, the virtual affiliate system must do the configuring and assigning before any website visitor can use the system to refer traffic.  Unlike the Blackberry users in *NTP*, a website visitor here has no involvement or control over, and does not set into service, the "configuring" and "assigning" means in the system.  As the Federal Circuit has held, "direct infringement by 'use' of a system claim 'requires a party . . . to use each and every element of a claimed [system]."[36]  Website users simply cannot infringe the Essociate Patent.  Moreover, even if they *could* infringe (for reasons Essociate has failed to explain), that would not make *Crakmedia* a direct

---

[33] Davidson Ex. 5 at 177.

[34] *NTP*, 418 F.3d at 1317.

[35] Davidson Ex. 1 at 26 (claim 28).

[36] *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

6532386.1

infringer, as Essociate has alleged.[37]  Direct infringement would require that Crakmedia itself or its agent—not some third-party website visitor—use each and every part of a claimed system.[38]   Because Crakmedia is located entirely in Canada, it cannot directly infringe the Essociate Patent.  And because website users cannot directly infringe, Crakmedia cannot be liable for inducing infringement.

Essociate refuses to address this glaring problem with its infringement case. It either has no theory for overcoming the extraterritoriality problem, or it is refusing to share that theory with Crakmedia, as the Patent Local Rules require. Either way, it is leaving Crakmedia is in the dark about why it is being sued, which violates the Rules.

Before it proceeds further with its case, the Court should require Essociate to explain its theory for showing its patent claims are "used" in the United States (or otherwise infringed) by Crakmedia, in compliance with the Patent Local Rules.

**(b)  The contentions do not map each of the construed elements of claim 15 to the accused instrumentalities**

The Patent Local Rules require any party claiming patent infringement to provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."  Patent L.R. 3-1(c).  The patent holder "must map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction."[39]   This comparison must be done "as specific[ally] as possible" under Local Rule 3-1(b).  Infringement contentions

---

[37] *See, e.g.,* Davidson Ex. 5 at 177.

[38] *See* 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.")

[39] *Shared Memory Graphics, LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. December 30, 2012).

6532386.1

1   which simply mimic claims in the patent, or are vague discussions of the claim

2   terms, are inadequate.[40]

3        While infringement contentions do not need to prove an infringement case

4   with specific evidence, they do have to demonstrate to both the court and the

5   alleged infringer exactly why the patentee believed before filing suit it had a

6   reasonable chance of proving infringement.[41]  Stated differently, the patentee has

7   an obligation to provide sufficient detail to provide "fair notice of the nature of the

8   infringement claims alleged."[42]

9        Judged by these standards, the Rule 3-1(c) charts provided by Essociate as

10  "amended" infringement contentions are wholly inadequate.  (*See* Davidson Exs. 2,

11  15.)  These charts fail to map specific elements of the alleged infringing products

12  onto Plaintiff's claim construction, and fail to demonstrate why Essociate believed

13  before filing suit—or why it believes today—that it has a "reasonable chance" of

14  proving infringement.

15            **(i)      Essociate does not say why there is**

16                     **"correlation" between the new TWUID and the**

17                     **alleged SID**

18       As the Court is aware, Essociate's patent claims require "correlating" a

19  virtual affiliate ID with the unique ID system used by a merchant to keep track of

20  its own affiliate traffic. Ex. 1 at 27.  So it is important that Essociate identify this

21  required correlation in its infringement contentions.  Essociate has not done this.

22  Its contentions merely say that some ***unidentified relationship*** is either created or

23  recognized between the alleged SID and TWUID:  "***CrakRevenue creates or***

24  ***recognizes a relationship between the received SID <ubvN_bHbck> and a***

25  _____

26  [40] *See Network Caching*, 2002 U.S. Dist. LEXIS 26098, at *16.

27  [41] *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000).
    [42] *Theranos, Inc. v. Fuirsz Pharma LLC*, 2012 U.S. Dist. LEXIS 172160, *19 (N.D.

28  Cal. 2012).

***TWUID<l=9057&t=33633>*** corresponding to the unique identification system of VideosZ.com's affiliate system."[43]   Saying there is a "relationship" without identifying what it is, fails to provide notice of an infringement theory.   Under the Rules, Essociate must provide a "specific link" or "explanation" for how the values it identifies "map onto the claim language."[44]

It is entirely possible that Essociate does not even have a theory regarding what "relationship" there supposedly is between these two values ("SID <ubvN_bHbck> and a TWUID<l=9057&t=33633>").   The SCTR declaration that Essociate says its new contentions "reflect"[45] did not actually say there is any relationship between these values.   SCTR made clear that it does not even track Crakmedia's affiliates, as the patent claims require.   *See* Davidson Ex. 14, ¶ 13 ("SCTR's system does not monitor and respond to fraudulent referrals or tracking or control the quality of referrals from Crakmedia.")   All that SCTR keeps track of is that traffic came from Crakmedia, SCTR's own direct affiliate—"regardless of the source of that traffic."[46]   SCTR simply does not care about the "source of that traffic" (e.g., whether it came from Crakmedia's so-called subaffiliates).   And that is why the new supposed new "TWID"—the values "l" and "t"—identify only *Crakmedia* as the source of traffic, not Crakmedia's affiliates.   *See* Davidson Ex. 14 at ¶ 18 ("The variable 't'…is used by SCTR's affiliates, in this case Crakmedia, to have a unique ID per link.");   *see also id.* at ¶ 20 ("SCTR only needs the variable 'l' to track the affiliate traffic, if the Link ID is 9057 or 23682 or 24681 or 25156, then SCTR knows the traffic is coming from CrakMedia.")

---

[43] Davidson Ex. 15 at 237, 242 (emphasis added).

[44] *Network Caching*, 2002 U.S. Dist. LEXIS 26098 at *18.

[45] Davidson Decl., ¶ 14.

[46] Davidson Ex. 14, ¶ 13 ("When SCTR receives traffic from CrakMedia, it simply credits CrakMedia for that traffic, regardless of the source of that traffic.")

6532386.1

1    Look at from another perspective, Essociate's patent claims require

2  correlating two different IDs that both are supposed to identify webmaster affiliates

3  (TWUID and SID).  Essociate has offered no explanation for contending that

4  Crakmedia "correlates" an ID that identifies *itself* ("l" and "t") with the IDs of its

5  webmasters.  Essociate's contention simply makes no sense, and it provides no

6  notice of the theory it is pursuing.

7    The Court should order Essociate to specify what "relationship" it contends

8  exists between the SID (webmaster affiliate ID) and the TWUID (the "l" and "t").

9  If Essociate is unable or unwilling to do this under Rule 11, it should not proceed

10  further with this case.

11    **(ii)    Essociate does not say how it finds**

12        **"correspond[ence]" between the unique**

13        **identification system of VideosZ.com and the**

14        **TWUID ("l" and "t" values)**

15    The claims required the TWUID to be a value "corresponding to the unique

16  identification system of the requested Merchant affiliate system."[47]  Essociate does

17  not explain why it contends this is so for its new alleged "TWUID."  Instead,

18  Essociate parrots back the language of the claims to assert—without explanation—

19  that the new alleged "TWUID (l=9058&t=33633)" is a value "corresponding to the

20  unique identification system of VideosZ.com."  Davidson Ex. 15 at 237.

21    In addition to being *unexplained*, Essociate's assertion is confusingly

22  *inconsistent*.  Essociate identifies the "unique identification system for

23  VideosZ.com" as a "cookie" system by referring to an "Attach[ment] F."[48]

24  Essociate does not say how the new TWUID (the "l" and "t" values in the URL)

25  are supposed to—or even can—correspond to this "cookie" system.  The SCTR

---

[47] Davidson Ex. 1 at 27 (col. 23, lines 16-20).

[48] *See* Ex. 15 at 236; Davidson Ex. 3 at 132 ("How do you track webmaster sales?... [SCTR] "track[s] sales using PHP sessions and cookies.").

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

1  declaration Essociate obtained in lieu of a deposition never says this is the case.[49]

2  Moreover, Essociate's counsel stated during a conference of counsel that Essociate

3  itself does not contend that a "cookie" system meets the "unique identification

4  system" requirement.[50]

5      The Court should require Essociate to identify in its contentions the claimed

6  "correspond[ence]" between the "unique identification system" used by SCTR and

7  the new values it is calling a "TWUID."  If Essociate can state no theory on this

8  critical issue under Rule 11, it should not proceed further with this lawsuit.  If it

9  has a theory, it should disclose it in its contentions, as the Rules require.

10                  **(iii)      Essociate does not identify where it finds**

11                           **"configuring" SCTR's affiliate system through**

12                           **a "data setup" operation**

13      Under Rule 3-1, infringement contentions "must map specific elements of

14  Defendants' alleged infringing products onto the Plaintiff's claim construction."[51]

15  In the "amended" chart for claim 15, Essociate includes a claim construction for

16  the "configuring" step, but it appears to use a different construction to show

17  "infringement."  This creates, at a minimum, an ambiguity that Essociate must

18  correct in order to provide fair notice of its contentions.

19      In particular, Essociate includes in its chart a "data setup operation"

20  construction for "configuring," but it does not actually *use* that construction.[52]

---

[49] To the contrary, the declaration says that the "l" value defines payout per sale, and "t" is used by the affiliates themselves.  Davidson Ex. 14 at 223-224.

[50] Davidson Ex. 9 at 199 ("You stated on our call that systems using 'cookies' do not use unique ID system according to the Essociate patent, yet your own contentions identify such a system for this element.")

[51] *Shared Memory Graphics, LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2012).

[52] Essociate may have realized that this definition does not work in this case.  The Piquet declaration from SCTR made it crystal clear that Crakmedia has ***nothing*** to do with configuring SCTR's system to include the "l" and "t" variables:  "For

6532386.1

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

1   Rather than point to any "data setup operation," Essociate states that a "code

2   segment **configured the VideosZ.com Redirect Link**—which is a URL that is

3   part of VideosZ.com's affiliate system—by including the 'l', 't', and 'Craktracker'

4   variables."[53]   Claim 15 actually requires "configuring an existing ***affiliate***

5   ***system***."[54] Configuring "a URL" is nothing more than "generating [the] URL,"

6   which is a subsequent step of the same patent claims.[55]

7        At a minimum, Essociate must identify how a code segment "configures" a

8   URL and why this is a "data setup operation."  Essociate's current contention on

9   the "configuring" step is ambiguous, and thus inadequate to provide notice of

10   Essociate's theory on this step.

11        **(c)   The contentions do not map each of the construed**

12             **elements of means plus function claim 28 to the**

13             **accused instrumentalities**

14        Claim 28 is similar to claim 15, but is a "system" claim written in means-

15   plus-function language to require use the structure disclosed by the patent

16   specification for performing each "means" as well as equivalents.[56]  Essociate's

17

18   _____

19   (…continued)

20   SCTR's 18andabused website, the structure of the 18andabused website is the
     same for CrakMedia as any other SCTR affiliate.  ***SCTR added the "craktracker"***

21   ***pass through variable to the website only***…."  Davidson Ex. 14 ¶ 16 (emphasis
     added).  *See also* id. at ¶ 16 ("SCTR did not change its affiliate program for

22   CrakMedia.")  In light of the testimony that SCTR always used the supposed
     "TWUID," even before working with Crakmedia, Essociate has no basis for

23   contending that Crakmedia has "configured" the SCTR system to include the

24   supposed TWUID.

25

26   [53] Davidson Ex. 15 at 237 (emphasis added).

     [54] Davidson Ex. 1 at 27 (col. 23, line 1).

27   [55] Ex. 1 at 27 (col. 23, line 20).

28   [56] 35 U.S.C. § 112 ¶ 6 (now restated as 35 U.S.C. § 112 (f)).

1  contentions regarding claim 28 are therefore too conclusory for the same reasons

2  identified with respect to claim 15.[57]

3        Moreover, Essociate still has not explained whether it contends that

4  Crakmedia infringes through the "lookup table" correlation method or its "hybrid"

5  correlation method.  Davidson Ex. 5 at 178.  Presumably, if Essociate believes

6  there is a correlation between the TWUID and SID, it can say what it means by

7  this—at least by stating whether the TWUID is a "hybrid" value that includes the

8  SID.  Whatever the reason for Essociate's silence, its contentions fail to provide

9  fair notice of its basis for alleging infringement.  For that reason as well, the

10  contentions are inadequate under the Patent Local Rules.

11            **(d)    The contentions do not identify the accused**

12                 **instrumentalities with specificity**

13        In yet another violation of Rule 3-1, Essociate purports to identify basically

14  anything Crakmedia has ever done in the affiliate marketing world as an

15  infringement.  It identities as "'Accused Instrumentalities'":

16

17        all versions of CrakMedia's affiliate-marketing service made or used,
          in the United States since the '660 patent issued, including, but not
18        limited to CrakMedia's online CrakRevenue affiliate platform
          described and available at http://www.crakrevenue.com, all computer
19        and network hardware and software for these CrakMedia products,
          and all services supporting these CrakMedia products or offered in
20        connection with these products, such as hosting services, training
21        services, help-desk support services, implementation and

22
---
23  [57] In addition these common issues, Essociate's claim charts for claim 28 are
    lacking because they fail to map the means-plus-function claim terms, as Essociate
24  interprets them, to each element of the accused instrumentality.  Rule 3-1(c)
    requires that Essociate identify, no later than 14 days from the Case Management
25  Conference, the structures it believes correspond to the structure disclosed in its
    patent for each claimed function.  Essociate has not done that here.  Under Rule 11,
26  Essociate had to have <u>some basis</u> for asserting that the claimed means for
    performing the claimed functions (if any are disclosed) are used by Crakmedia.
27  Essociate has failed to disclose what structure <u>in its own patent</u> it contends is used
    by Crakmedia for the functions of "configuring," "assigning," "receiving,"
28  "correlating," and "generating."

6532386.1

customization services, content services, and affiliate-tracking services."

Davidson Ex. 15 at 228.

This categorical identification of every product or service ever provided violates Patent Local Rule 3-1(b).  The Rule requires that contentions identify "each accused apparatus, product, device, process, method, act or other instrumentality ('Accused Instrumentality')" and that "[t]his identification shall be as specific as possible."   This plain requirement of the Rule was confirmed in a recent case:

> "[t]he Patent Local Rules require[s] specific identification of
> particular accused products.  [They do] not tolerate broad categorical
> identifications like 'mobile devices running Android,' nor [do] they
> permit use of representative examples.  Representative examples may
> be a useful tool for proving an infringement case at trial, but a full list
> of accused products must be disclosed as part of a party's
> infringement contentions."[58]

Thus, in *Vigilos LLC v. Sling Media Inc*.[59], the court rejected a broad categorical definition of "Accused Instrumentality" coupled with a representative example, similar to the approach Essociate pursues here:

> . . . all Slingbox products (including Slingbox SOLO and Slingbox
> PRO-HD), all Sling Adapter products, and all SlingLoaded
> products made, sold or offered for sale by any of the Defendants,
> including the DISH ViP922 SlingLoaded DVR and all EchoStar Set-
> Top Boxes using Placeshifting/TV Everywhere technology.

---

[58] *Oracle America, Inc. v. Google Inc*., 2011 U.S. Dist. LEXIS 109544, 18 (N.D. Cal. Sept. 26, 2011).

[59] 2012 U.S. Dist. LEXIS 189491, *13 (N.D. Cal. July 12, 2012).

19

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

Similarly, in *Bender v. Maxim Integrated Prods.*,[60] the court refused to "order defendant to produce proprietary schematics for over 200 products based on an assumption" by plaintiff regarding how they operated.  While the court was "sensitive to plaintiff's concerns about the expense of reverse engineering over 200 products, it [was] also sensitive to the desire of defendant not to be forced to produce proprietary schematics  unnecessarily."[61]   Moreover, the court noted, "plaintiff bears the burden of providing infringement contentions that specify the location of every claim element within the accused products, so that the Court can make a principled decision on whether discovery will proceed."[62]

Here, Essociate should be ordered to limit the "Accused Instrumentalities" to what it is prepared to specifically accuse in its infringement chart.  Otherwise, Essociate may purport to argue that Crakmedia must produce under Patent Local Rule 3-4 source code and other documentation for nearly everything Crakmedia has ever done.  Crakmedia has agreed to produce to Essociate's expert upon entry of a protective order sensitive source code sufficient to describe the relevant functionality of the accused Crakmedia-SCTR interaction that Essociate has charted with respect to a specific website.  But it would be an enormous and unjustified burden for Crakmedia to have to produce all of its source code for products and services that not only have not been accused of infringement in any claim chart, but that cannot possibly infringe through operation with any third-party merchant.

The Court should order Essociate to specifically identify the "accused instrumentalities" as required by Rule 3-1.

---

[60] 2010 U.S. Dist. LEXIS 32115, *6 (N.D. Cal. Mar. 22, 2010).

[61] *Id*.

[62] *Id*.

6532386.1

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

**(e)     The contentions use boilerplate language to allege infringement under the doctrine of equivalents**

Essociate has not provided a theory of infringement under the doctrine of equivalents.  It has instead "reserved" the right to do so in the future.  Such boilerplate statements should be stricken because they provide no notice of any theory.

The Patent Local Rules require a limitation-by-limitation analysis, not a boilerplate reservation.[63]  This applies not only to contentions of literal infringement, but also infringement under the doctrine of equivalents.[64]   It is not designed to give a patentee a second shot at proving infringement "[t]o the extent that any limitation is found to be not literally present."[65]

The Court should therefore strike Essociate's purported "contention" on equivalents.

**2.     Essociate Has Failed to Make a Reasonable Inquiry, as Required By FRCP 26(g) and Patent Local Rule 2-3, Into the Alleged Infringing Products Before Seeking Discovery.**

Federal Rule of Civil Procedure Rule 26(g) and the Patent Local Rules require a party to make a "reasonable inquiry" before seeking discovery, and parallel the thrust of Rule 11 with respect to making allegations in a complaint.[66]

---

[63] *Rambus Inc. v. Hynix Semiconductor, Inc.*, 2008 U.S. Dist. LEXIS 123187, 41-42 (N.D. Cal. Dec. 29, 2008).

[64] *Id*.  The doctrine exists to prevent "a fraud on the patent." *Id*. (quoting *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608 (1950)).

[65] *Id*.

[66] *Micro Motion*, 894 F.2d at 1327; *Network Caching*, 2002 U.S. Dist. LEXIS 26098, at *12 ("standard of FRCP 11 prefiling inquiry establishes a minimum level of detail that Patent LR 3-1 requires"); *see also* Patent L.R. 2-3 ("All statements, disclosures, or charts filed or served in accordance with these Patent Local Rules shall be dated and signed by counsel of record.  Counsel's signature shall constitute a certification that to the best of his or her knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in the statement, disclosure, or chart is complete and correct at the time it is made.").

21

1        In infringement cases, Rule 11 requires a party claiming infringement, "at a

2  bare minimum, apply the claims of each and every patent that is being brought into

3  the lawsuit to an accused device and conclude that there is a reasonable basis for a

4  finding of infringement of at least one claim of each patent so asserted."[67]

5  Essociate's inability to explain its own contentions shows that it had no reasonable

6  basis—either for filing suit or "serving" its "amended" contentions.

7        Essociate's categorical accusation of all Crakmedia's affiliate-marketing

8  services is particularly egregious based on its "amended" contentions.  As

9  explained above, these contentions now rely on an idiosyncratic combination of the

10  "merchant network" (SCTR) with Crakmedia's system (*i.e.,* the TWUID is a

11  combination of the SCTR-designed values "l" and "t").  Essociate has no Rule 11

12  basis to contend that the same SCTR merchant software or system is used by every

13  other merchant Crakmedia interacts with, and therefore no basis for alleging

14  infringement.  .

15        **D.**    **<u>The Court Should Not Permit Discovery Until Essociate Has Met</u>**

16              **<u>its Obligations Under Patent Local Rule 3-1.</u>**

17        Essociate's infringement contentions demonstrate that it does not have a

18  reasonable basis to conclude that Crakmedia infringes any claim of the Essociate

19  patent.  As a result, under Federal Rule of Civil Procedure 26(g) and Patent Local

20  Rule 2-3, Essociate cannot claim to be entitled to discovery at this stage with

21  respect to its infringement claims or contentions.[68]

22

[67] *View Eng'g*, 208 F.3d at 986 (applying Ninth Circuit law); *see also Antonious*,
275 F.3d at 1072 (at a minimum, the evidence uncovered by the patent holder's
investigation prior to bringing a lawsuit must be sufficient to permit a reasonable
inference that all the accused products infringe.).

[68] *Cf. Micro Motion, Inc.*, 894 F.2d at 1327 (refusing to permit discovery relating to
infringing nature of competitors' products where requesting party put forth no
evidence of infringing nature of products, yet requested models of products, test
reports and complaints by customers on each model).

Discovery is not permitted on mere unfounded suspicion of infringement.[69] Similarly, a party cannot get discovery to help frame its infringement contentions.[70] Until a patent holder meets its burden of providing infringement contentions that comply with Patent Local Rule 3-1, courts will not order the accused infringer to proceed with its obligations under Patent Local Rule 3-1.[71]

The discovery rules are "designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. . . . That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request."[72] That is because "[a] bare allegation of wrongdoing . . . is not a fair reason for requiring a defendant to undertake financial burdens and risks to further a plaintiff's case."[73]

The same is true of infringement contentions. Before service of adequate infringement contentions, defendants are not required to "show their hand" by responding to discovery based on a plaintiff's hope that this might reveal whether particular limitations are found in each accused device.[74] Rather, plaintiffs must

_____

(…continued)

[69] *Micro-Motion*, 894 F.2d at 1327.

[70] *Infineon*, 2012 U.S. Dist. LEXIS 77220, at *5 (rejecting plaintiff's argument that defendant should divulge discovery relating to infringement so that plaintiff could rely on the materials in preparing its patent infringement contentions).

[71] *Bender*, 2010 U.S. Dist. LEXIS 32115, at *7 ("Until plaintiff meets the burden of providing infringement contentions compliant with Patent L.R. 3-1, the Court will not order defendant to proceed with discovery").

[72] *Micro-Motion*, 894 F.2d at 1327.

[73] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 363 (1978).

[74] *Shared Memory Graphics, LLC v. Apple, Inc.*, No. 10-2475 MMC, 2011 U.S. Dist. LEXIS 99166, at *21-*22 (N.D. Cal. Sept. 2, 2011).

6532386.1

meet the burden of providing infringement contentions compliant with Patent L.R. 3–1 before demanding that a defendant proceed with discovery.[75]

It is therefore well established that a party alleging a claim for infringement cannot force its adversary to bear the costs of discovery before it has articulated an infringement theory under Rule 11 and Patent Local Rule 3-1.[76]  Accordingly, Crakmedia respectfully requests that the Court strike Essociate's inadequate infringement contentions and stay discovery relating to infringement.

## IV.   CONCLUSION

The Court should enforce the Patent Local Rules by requiring Essociate to provide infringement contentions that specifically identify its infringement theories.  The Court should strike Essociate's existing infringement contentions, preclude Essociate from proceeding on its "amended" contentions, and stay discovery relating to infringement as well as Crakmedia's obligation to provide responsive invalidity contentions based on the schedule in the Patent Local Rules.

DATED:  December 8, 2014            Respectfully submitted,

By:       /s/ Ben M. Davidson
      Ben M. Davidson, State Bar No. 181464
      bdavidson@davidson-lawfirm.com
      Attorneys for Defendant
      4355768 CANADA, INC., a Canada
      corporation, d/b/a/ CrakMedia

---

[75] *Bender*, 2010 U.S. Dist. LEXIS 32115, at *7 (internal punctuation marks omitted); *Theranos, Inc. v. Fuisz Pharma LLC*, 2012 U.S. Dist. LEXIS 172160, *19 (N.D. Cal. Nov. 30, 2012).

[76] *see View Eng'g*, 208 F.3d at 986.

**DEFENDANT CRAKMEDIA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**