BEN M. DAVIDSON (STATE BAR NO. 181464)
bdavidson@davidson-lawfirm.com
Davidson Law Group, a Law Corporation
11377 West Olympic Boulevard
Los Angeles, California 90064
Telephone: (310) 473-2300
Facsimile: (310) 473-2941

Attorneys for Defendant
4355768 CANADA, INC.

# UNITED STATE DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DISTRICT

| | |
|---|---|
| ESSOCIATE, INC., a Delaware corporation,<br><br>　　　　Plaintiff and Counterdefendant,<br><br>　　v.<br><br>4355768 CANADA, INC. dba Crakmedia,<br><br>　　　　Defendant and Counterclaimant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 14-CV-006790JVS-DFM<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT AND COUNTERCLAIMANT CRAKMEDIA TO AMEND ANSWER AND COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER; [PROPOSED] AMENDED COUNTERCLAIM; [PROPOSED] AMENDED ANSWER**<br><br>Time:　1:30 PM<br>Date:　February 9, 2015<br>Judge:　Hon. James V. Selna |

6583893.1

**[PROPOSED] ORDER RE MOTION TO AMEND ANSWER AND COUNTERCLAIMS**

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on February 9, 2015, at 1:30 p.m., or as soon thereafter as counsel may be heard at the United States District Court for the Central District of California, before the Honorable James V. Selna, Defendant 4355768 CANADA, Inc., dba, Crakmedia, ("Crakmedia") will and hereby does move the Court for an Order granting leave to amend Crakmedia's answer and counterclaims to add a defense of inequitable conduct based on Essociate's named inventors withholding of material prior art from the United States Patent & Trademark Office, specifically, their own prior art virtual affiliate system, which they called XPays.

This motion is filed following unsuccessful but good-faith attempts by Crakmedia's counsel to meet and confer with counsel for Essociate under Local Rule 7-3, beginning with a request made by email on December 12, 2014.

DATED:  December 26, 2014         Respectfully submitted,

                                  DAVIDSON LAW GROUP

                                  By:      /s/ Ben M. Davidson
                                  Ben M. Davidson, State Bar No. 181464
                                  bdavidson@davidson-lawfirm.com

                                  Attorneys for Defendant
                                  4355768 CANADA, INC., a Canada
                                  corporation, d/b/a/ CrakMedia

1

**DEFENDANT CRAKMEDIA'S MOTION TO AMEND ANSWER AND COUNTERCLAIMS**

## MEMORANDUM OF POINTS & AUTHORITIES

### I.     INTRODUCTION

Defendant Crakmedia respectfully moves the Court for leave to amend its answer and counterclaim to add an inequitable conduct defense based on the failure of Essociate's named inventors to comply with their duty of disclosure owed to the U.S. Patent & Trademark Office.

Crakmedia is filing concurrently with this motion its proposed First Amended Answer of Defendant 4355768 Canada, Inc., dba Crakmedia ("Amended Answer") and First Amended Counterclaim Of Defendant 4355768 Canada, Inc., dba Crakmedia ("Amended Counterclaim") under Local Rule 15-1.  The new counterclaim (Third Counterclaim) starts at page 4 and is identical to the new Fourteenth Affirmative Defense in the Amended Answer.  These proposed pleadings also are Exhibits 1 and 2 to the Declaration of Ben M. Davidson filed concurrently herewith.

### II.    FACTUAL BACKGROUND

As alleged in the proposed Amended Counterclaim and Amended Answer, this case involves a clear case of inequitable conduct—inventors who concealed from the Patent Office that the "invention" they were trying to patent was a mere unpatentable variation of a prior art system that they had publicly used more than one year before applying for their patent.

The patent-in-suit purports to describe an "invention [that] provides a method, system and computer program for affording Virtual Affiliates access to an existing affiliate system."[1]  This idea of providing "virtual affiliates" to existing affiliate systems is at the heart of the patent's disclosure and claims.

Although the Patent Office allowed the Essociate Patent to issue, that was because Essociate withheld the closest prior art.  In particular, more than one year before applying to patent its virtual affiliate concept, Essociate's named inventors,

---

[1] *See* Essociate Patent (U.S. Patent No. 6,804,660), Abstract.  (Davidson Ex. 3.).

Michael Landau and Evan Horowitz, had operated a prior art system called XPays. That prior art system also provided virtual affiliates, and it also configured existing affiliate systems to receive referrals from an affiliate pooling system. *See* Amended Counterclaim (Davidson Ex. 1) ¶¶ 24, 37.

The XPays prior art system came to light in Essociate's unsuccessful lawsuit against Azoogle.com filed in the Western District of Wisconsin. There, the Court noted in granting summary judgment of non-infringement that Essociate's named inventor Landau had been "disingenuous" in trying to distinguish XPays from the system that Essociate was accusing of infringement.[2]

In light of that opinion, Crakmedia served an interrogatory in this case requiring Essociate to "[e]xplain the complete basis for why Essociate did not disclose [to the Patent Office] the Xpays prior art system (including the version referenced at page 22 of the summary judgment opinion in *Essociate v. Azoogle.com* . . . ."[3] The sum total of Essociate's explanation was that its inventors "did not disclose any earlier version of the Xpays system during prosecution because they did not believe it to be relevant to the claimed invention and because they were unaware of any reason or duty to do so."[4] Essociate did not provide as part of the "complete basis" it was required to provide any details regarding differences between XPays and the claimed invention or any other possible justification for not disclosing its own prior art reference to the Patent Office.

Crakmedia also served requests for admissions on Essociate regarding its withholding of XPays. A response to those requests was due within thirty days of service, on November 3, 2014. Essociate did not respond until November 18, 2014, so the requests were automatically deemed admitted under Federal Rule of Civil Procedure 36. Among other things, these admissions include that: (1) "Essociate made a deliberate decision not to disclose its XPays prior art system to the United

---

[2] Davidson Ex. 4 at 22.
[3] Davidson Ex. 5 at 4-5.
[4] *Id.*

DEFENDANT CRAKMEDIA'S MOTION TO AMEND ANSWER AND COUNTERCLAIMS

6583893.1

States Patent & Trademark Office during prosecution of the Essociate Patent"; (2) "at least by May 1, 1999, Essociate's named inventors operated a system that allowed 'groups of Webmasters to participate in existing Merchant affiliate systems without the need of joining those Merchant affiliate systems . . . ."; (3) "before May 1, 1999, Xpays LLC operated an affiliate system at xxx.xpays.com that included a unique webmaster affiliate ID in a URL passed to a merchant affiliate system."[5]

On November 19, 2014, Essociate made a production of non-confidential documents, which included two expert reports relating to the XPays prior art system from the *Azoogle.com* litigation. The first report was from an expert named Peter Kent who had been retained by the defendant, Azoogle.com.[6] The second report was from Essociate's own named inventor, Michael Landau, who summarized Kent's opinions and attempted to rebut them.[7]

In trying to rebut the Kent expert report, Landau's report actually showed that the XPays system was not just material, but so similar in so many respects to what had been described in the patent application that its relevance must have been obvious to Landau and his co-inventor, Horowitz.

As the Summary of the Invention section of their patent states, the named inventors claimed that their "invention allows groups of Webmasters to participate in existing Merchant affiliate systems without the need of joining those Merchant affiliate systems."[8] Similarly, the first and most important limitation of independent claims 1, 15, and 28 requires "configuring an existing target affiliate system to receive referrals from a first plurality of Webmasters in an affiliate pool of source Webmasters such that the target Merchant affiliate system recognizes a transaction

---

[5] Davidson Ex. 6, at 8-9, RFA No. 11.
[6] The Kent report was marked confidential in the *Azoogle* litigation, but Essociate's counsel stated in a November 19, 2014 email that it was being produced as part of Essociate's "non-confidential document production." Essociate's counsel later confirmed in a phone call that it does not consider the XPays system described in this report to be confidential. Nevertheless, out of an abundance of caution, the report is not being filed with this motion.
[7] Davidson Ex. 7 (Landau expert report).
[8] Davidson Ex. 3 at col. 4, lines 54-56.

3

as originating from a source Webmaster in an affiliate pooling system."[9] That is exactly what XPays did.

As Landau stated in the *Azoogle.com* case, "starting in early 1999, XPays provided its affiliates access to merchant affiliate systems associated with the websites operated at igallery.com ("iGallery") and python.com ("Python"). iGallery's and Python's merchant affiliate systems each assigned an affiliate ID to XPays."[10] This is a virtual affiliate system, and Essociate's principals were commercially running it more than one year before Essociate's filed its provisional patent application, on May 1, 2000. Indeed, XPays was a statutory bar—prior art under 35 U.S.C. § 102 (b) that Essociate could not have overcome by trying to prove an earlier invention date, *i.e.,* by "swearing behind" the reference. To fulfill their duty of good faith and candor to the Patent Office, Essociate's named inventors were required to cite this prior art. Instead, they concealed it.

The Landau report also showed that Essociate's claim in this case that the inventors did not see XPays as even being "relevant" lacks credibility. As alleged in the Amended Counterclaim, the XPays system not only disclosed a virtual affiliate system—unlike any of the prior art reviewed by the Patent Office—but it was even similar in many details, including a method of correlating webmaster identifiers substantially as described in the Essociate patent. *See* Amended Counterclaim (Davidson Ex. 1), ¶ 32.

Essociate made various arguments during the *Azoogle.com* litigation to distinguish XPays from its claims. But those arguments would not have prevented the examiner from rejecting its claims. First, the Patent Office must give claims their broadest reasonable interpretation during prosecution. Second, even if there were some differences in the details of the XPays and claimed systems, that would not have prevented the claims from being rejected as obvious under 35 U.S.C. §

---

[9] Ex. 3, claims 1, 15, 28.
[10] Ex. 7 at 16.

4

**DEFENDANT CRAKMEDIA'S MOTION TO AMEND ANSWER AND COUNTERCLAIMS**

6583893.1

103. Moreover, Essociate's attempts to distinguish XPays are inconsistent with how broadly it has interpreted the claims in this case to argue that Crakmedia somehow infringes them.

Essociate's allegation that its inventors were "unaware of any reason or duty" to cite material prior art is also not credible. Landau is a lawyer, and he is familiar with patent law. In fact, he prepared the first draft of the application, and both he and Horowitz signed oaths acknowledging their obligation to disclose material prior art. In addition, while withholding XPays—which was obviously relevant because it was a virtual affiliate system—the named inventors represented to the Examiner that they were disclosing the "closest prior art" to assist in and accelerate the examination of their application. The named inventors then went on, through their counsel, to distinguish the prior art in ways that would not have been possible had they disclosed their XPays system.

## III. ARGUMENT

### A. Legal Standard Applicable To Motions To Amend

Although the parties must always obtain leave of Court to amend their pleadings, Rule 15 requires that such leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Farnan v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits."); *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F.Supp.2d 484, 487 (D. Del. 2003) ("[L]eave should be freely granted unless there is an apparent reason for denying a request"). The circumstances that would justify a denial of leave were discussed by the United States Supreme Court in *Farnan v. Davis*, 371 U.S. 173, 182 83 S. Ct. 227,230 (1962):

> In the absence of any apparent or declared reason-- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

6583893.1

amendment, futility of the amendment, etc., the leave sought should, as the rule requires, be "freely given."

The Ninth Circuit has held that absent prejudice or any of the other factors in *Farnan*, "there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *C.F. v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011).

### B.     The Court Should Grant Leave to Amend

In light of discovery that has been obtained so far in this case, Crakmedia has a sufficient basis to plead inequitable conduct and has done so without any undue delay. Crakmedia's proposed amended counterclaim now includes a Third Counterclaim for unenforceability based on inequitable conduct. Crakmedia's proposed amended answer similarly includes a Fourteenth Affirmative Defense of unenforceablility based on inequitable conduct.

The inequitable conduct defense is based on the specific actions of Landau and Horowitz in withholding the closest prior art—their XPays system—while representing to the examiner that they had disclosed and distinguished the closest prior art to help accelerate the examination of their patent application.

#### 1.     There Was No Undue Delay

As explained above, Crakmedia received non-confidential documents from Essociate on November 19, 2014. Crakmedia is filing this motion just over one month after receiving these documents. Crakmedia's inequitable conduct counterclaim is also informed, in part, by Essociate's revising its infringement contentions on December 1, 2014. These revised contentions appear to take an extremely broad view of what the Essociate patent claims cover, and further confirm that the XPays prior art system was highly material to these claims.

6583893.1

6

**DEFENDANT CRAKMEDIA'S MOTION TO AMEND ANSWER AND COUNTERCLAIMS**

There was therefore no delay in filing this motion. Crakmedia is filing it by the December 26, 2014 deadline set for amending pleadings by the Scheduling Order.[11]

### 2. There Is Also No Prejudice To Essociate

This case is still in its early stages. In fact, as mentioned above, Essociate just very recently withdrew its original contentions and is currently seeking leave to replace them with new contentions using extremely broad interpretations of its claims. There have been no claim construction proceedings in this case, no expert reports, and no depositions. Essociate is therefore not prejudiced by the amendment. Crakmedia, moreover, disclosed to Essociate as part of the Rule 26(f) report that it would likely amend its counterclaim to include an inequitable conduct defense.

### C.   Crakmedia's Proposed Pleading Meets The Standards For Pleading Inequitable Conduct

Crakmedia's Amended Counterclaim and Amended Answer meet the requirements for pleading inequitable conduct in patent cases. In *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (*en banc*), the Federal Circuit held that in a case involving nondisclosure of information, the applicant must have made a deliberate decision to withhold a known material reference. *Id*. at 1290. This requires "but for materiality," that is, the Patent Office would not have allowed the claim if it had been aware of the undisclosed reference.

A lower standard of materiality is allowed for cases of affirmative egregious misconduct. *Id*. at 1292. An example of this is filing an unmistakably false affidavit. *Id*. at 1293. The reason for a less stringent rule for affirmative misrepresentations is that a patentee is unlikely to go to great lengths to deceive the

---

[11] On December 24, 2014, after unsuccessful efforts to meet and confer with Essociate following a December 12, 2014 email, Crakmedia sent an email to each of the four counsel representing Essociate in this case to ask if they would stipulate to a one-week extension of the deadline for amending pleadings. Essociate's counsel did not respond to this request.

1  PTO with a falsehood unless it believes that the falsehood will affect the issuance of
2  the patent. *Id*. at 1292.

3  Because inequitable conduct is a type of fraud, its allegations must be pled
4  with specificity under Federal Rule of Civil Procedure 9(b). *Exergen Corp. v. Wal-*
5  *Mart Stores, Inc*., 575 F.3d 1312, 1331 (Fed. Cir. 2009). The pleading must identify
6  the who, what, when and how of the material misrepresentation or omission
7  committed before the PTO. *Id*.

8  Here, the "who, what, when and how" of the inequitable conduct is alleged
9  specifically, in compliance with these requirements. As to "who," the individuals
10 alleged to have committed inequitable conduct by withholding prior art are
11 inventors Landau and Horowitz. "What" the inventors did was to withhold their
12 own prior art XPays system and, separately, to affirmatively misrepresent to the
13 Examiner that they had extensively searched for and found the "closest" prior art,
14 when, in fact, they knew the closest prior art was their own system because it was
15 also a virtual affiliate with the purported advantage of allowing referrals without
16 having the virtual affiliates sign up to an existing system.

17 The amended pleadings allege—and explain—that, but for the withholding of
18 the XPays system, the claims of the Essociate Patent would not have issued. XPays
19 was not just material. It taught the all-important but missing concept of "virtual
20 affiliates" or "affiliate pooling," the very thing that Essociate's named inventors
21 distinguished in the prior art that they submitted to the Patent Office. It is
22 inconceivable that the Patent Office would have allowed Essociate's patent to sail
23 through if it knew that what it was reviewing was merely an update to an existing
24 virtual affiliate system and, at the very most, only different in how a webmaster ID
25 was correlated to the webmaster ID system of the merchant system. *See* Amended
26 Counterclaim at ¶¶ 27-37. Essociate could not have claimed the advantages over the
27 prior art that it did if the Examiner knew that the prior art already included a virtual
28 affiliate system that tapped into existing affiliate systems and provided tracking. Id.

6583893.1

8
**DEFENDANT CRAKMEDIA'S MOTION TO AMEND ANSWER AND COUNTERCLAIMS**

at ¶ 47.

The inequitable conduct committed by Essociate is similar in nature to conduct of a patentee in *American Calcar, Inc. v. American Honda Motor Co.*, 768 F.3d 1185 (Fed. Cir. 2014). In this recent case, the Federal Circuit applied the holding in *Therasense* to affirm a finding of inequitable conduct and resultant unenforceability of a patent. In *Calcar*, the inventor of the company Calcar had developed a navigation system and used Honda's own prior art 1996 navigation system as his starting point. Unlike the inventors here, the inventor in *Calcar* at least disclosed the existence of the Honda navigation system in his patent. But he withheld details about how those systems worked, even though his patent claims related to those details. *Calcar*, 768 F.3d at 1187-88.

The district court found that but for the information about the prior art withheld by Calcar's inventor, the Patent Office would not have granted his patents. It also found that "the only reasonable inferences from the evidence were that [the named inventor] knew that the prior art was material to his invention and that he made a deliberate decision to withhold material information." *Id*. at 1188. The Federal Circuit affirmed.

Calcar challenged the district court's materiality finding by arguing that its claims would not have been obvious based on the Honda prior art system. *Id*. at 1190. The Federal Circuit, however, affirmed the finding under the broadest reasonable interpretation of the claims. *Id*. It also affirmed the district court's finding on intent to deceive. It rejected the argument that a more reasonable inference from the partial disclosure of the prior art was that the inventor's "inexperience may have contributed to a mistaken or accidental failure to disclose." *Id*. at 1191.

The proposed pleadings also explain that Landau and Horowitz engaged in an elaborate request to accelerate examination using a knowing and willful misrepresentation. Amended Counterclaim (Davidson Ex. 3) at ¶¶ 38-45. Rather

6583893.1

9

DEFENDANT CRAKMEDIA'S MOTION TO AMEND ANSWER AND COUNTERCLAIMS

than help the Examiner understand the scope of the prior art, Essociate's named inventors actively misled him into accelerating the examination in the false belief that the closest prior art had already been provided to him.   This misrepresentation constitutes inequitable conduct because it actively sought to mislead the Examiner to accelerate the search and examination of the application based on a misrepresentation.  Even if withholding XPays was not a "but for" cause of the Essociate patent's issuing—which it was—the misrepresentation made by Essociate was egregious and renders its patent unenforceable.  *See Therasense*, ., 649 F.3d at 1292.

## IV.   CONCLUSION

For the foregoing reasons, Crakmedia respectfully requests that the Court grant leave for it to file its Amended Counterclaim and Amended Answer, filed concurrently herewith and attached as Exhibits 1 and 2 to the Davidson Declaration.

DATED:  December 26, 2014            Respectfully submitted,

DAVIDSON LAW GROUP

By:        /s/ Ben M. Davidson
Ben M. Davidson, State Bar No. 181464
bdavidson@davidson-lawfirm.com

Attorneys for Defendant
4355768 CANADA, INC., a Canada corporation, d/b/a/ CrakMedia

6583893.1